```
        IN THE UNITED STATES DISTRICT COURT FOR THE
            SOUTHERN DISTRICT OF WEST VIRGINIA
                        CHARLESTON
```

**UNITED STATES OF AMERICA**

**v.**                              **CRIMINAL NO. 2:09-00251**

**ROBERT M. OTISO**

### RESPONSE OF THE UNITED STATES TO DEFENDANT ROBERT M. OTISO'S MOTION FOR RECONSIDERATION OF PRETRIAL DETENTION

Comes now the United States of America by Susan M. Robinson, Assistant United States Attorney for the Southern District of West Virginia, in opposition to defendant Robert M. Otiso's Motion to Reconsider Pretrial Detention.

### I. Background

On November 10, 2009 a grand jury sitting in Charleston West Virginia returned an eight-count indictment charging defendant Otiso and four co-conspirators with violations of federal law. Defendant Otiso is charged in all eight counts of the indictment as follows: Count One, conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 1349; Counts Two-Four, mail fraud in violation of 18 U.S.C. § 1341; Counts Five-Seven, wire fraud in violation of 18 U.S.C. § 1343; and, Count Eight, conspiracy to commit money laundering offenses in violation of 18 U.S.C. § 1956(h).

The indictment was unsealed following defendants' arrests in Minnesota on November 17, 2009.[1] Defendant Otiso appeared that day in magistrate court in the District of Minnesota for proceedings pursuant to Rule 5, Fed. R. Crim. P. The United States moved to detain defendant on the basis of risk of flight. Following a detention hearing on November 19, 2009 defendant Otiso was ordered detained upon the magistrate's finding that there existed no conditions of release which would reasonably assure defendant Otiso's appearance in the Southern District of West Virginia for future court proceedings. Defendant Otiso now seeks reconsideration of the magistrate court's order.[2]

## II. Legal Authority

### A. District Court Review of Detention

The Bail Reform Act, 18 U.S.C. § 3141, et seq.,(the "Act") authorizes and sets out the procedures for a judicial officer to

---

[1] Defendants charged in the indictment were all born in Kenya and lived in or near Minneapolis, Minnesota.

[2] Defendant has filed his motion pursuant to 18 U.S.C. § 1342(i). Section 1342(i) provides, in part, as follows:

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

This section does not authorize the relief sought by defendant. The United States views defendant's motion more appropriately as a review or an appeal of the magistrate court's ruling pursuant to 18 U.S.C. § 1345 and responds accordingly.

order the release or detention of an arrested person pending trial. With relevance to this case, a detention hearing must be held when the government moves for detention and the case involves a serious risk the defendant may flee. 18 U.S.C. 3142(f)(2).

Section 3145 of that Act authorizes review and appeal of a detention order by the district court.  This section provides in relevant part:

> (b) Review of a detention order.  If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order.  The motion shall be determined promptly.
>
> 18 U.S.C. § 3145(b).

The standard of review employed by the district court in reviewing a magistrate court's detention order is *de novo* and the district court must make an independent determination of the proper pretrial detention or conditions of release.  <u>United States v. Cutter</u>, 637 F. Supp. 348 (W.D.N.C. 2009), citing <u>United States v. Stewart</u>, 19 Fed. Appx. 46 (4th Cir. 2001)(unpublished).

Relevant factors that a court must consider in determining detention are the nature and circumstances of the offense charged, including whether the offense is a crime of violence, the weight of the evidence against the defendant, the history and characteristics of the defendant and the nature and seriousness of the danger to

3

any person or the community that would be posed if the defendant is released.  18 U.S.C. § 3142(g).  With regard to the risk of flight as a basis of detention, "the United States must prove by a preponderance of the evidence that no combination of conditions will reasonably assure the defendant's presence at future court proceedings." Stewart, 19 Fed. Appx. 46, 48-49 (citing United States v. Hazime, 762 F. 2d 34, 37 (6th Cir. 1985); United States v. Medina, 775 F. 2d 1398,1402 (11th Cir. 1985)(noting that, under the Act, the clear and convincing evidence standard applies only to a determination that "no condition or combination of conditions will reasonably assure the safety of any other person and the community")).  *De novo* review does not require the district court to conduct an evidentiary hearing.  See e.g. Cutter, 637 F. Supp. at 349; United States v. Stevens, 2009 WL 3669723 (S.D.W.V. 2009).

### III.  Discussion

The charges against Defendant Otiso stem from a sophisticated fraud scheme involving the charged defendants, as well as, known and unknown co-conspirators in Kenya and in the United States.  As alleged in the indictment, the scheme targeted state governments and their vendors causing at least four states to divert millions of dollars, to fraudulent bank accounts.  By establishing corporate entities in the names of entities similar to legitimate vendors of the states and obtaining employer identification numbers from the IRS,  defendants and their co-conspirators were able to open

4

fraudulent business bank accounts in North Carolina and Minnesota in the names of the vendors.  Direct deposit forms were then sent to the states. Believing the forms were authorization from their legitimate vendors to send electronic payments via ACH transactions, the states were scammed into sending millions of dollars representing payment to their legitimate vendors to the fraudulent bank accounts.  The bank accounts were controlled by defendants and their co-conspirators. The scheme netted defendants and their co-conspirators hundreds of thousands of dollars, much of which was  sent to a number of accounts at various banks in Kenya.

 The magistrate court fully considered defendant's circumstance and ties to Minnesota.[3]  Defendant clearly has no ties to the Southern District of West Virginia. The United States also recognizes that defendant had been in the United States for a considerable time, was employed and appears to have a stable residence in Minnesota. Contrary to defendant's assertion, however, the United States does not believe defendant's wife is a permanent resident and will advise the Court of her status upon confirmation from Immigration and Customs Enforcement.

 Defendant Otiso is a Kenyan national and has significant ties to Kenya.  Defendant has traveled to Kenya on two occasions in the last year, from December 2008 to January 2009 and most recently

---

[3]  The United States has requested a transcript of and exhibits presented during the proceedings below and will provide a copy to the Court when available.

from October 21, 2009 to November 10, 2009. Records obtained through the execution of a search warrant and presented to the magistrate below, show that on November 4, 2009 during defendant's last trip he purchased property in Nairobi, Kenya. Additionally, defendant possessed bank documents indicating that he has a bank account or accounts at Standard Chartered Bank in Nairobi, Kenya and potentially elsewhere.

As alleged in the indictment, in addition to cash and other withdrawals from TCF Bank in Minnesota, $773,223.00 in funds acquired from the scheme were wired to bank accounts in Kenya. Of that amount $677,405 remains unaccounted for.[4] Furthermore, the case involves the use of fraudulent identities, including driver's licenses, social security cards and a passport. Thus, unknown co-conspirators are in possession of significant fraudulent funds and have the motive and means, including the ability to create false identities, to assist defendant in leaving the United States or to conceal his whereabouts in the United States. Defendant is facing a significant term of incarceration, as well as, deportation from the United States if convicted on the offenses charged. The risk of defendant's flight is real and substantial.

---

[4] A wire of $95,818 from TCF Bank to NIC Bank Limited was reversed as a result of incomplete or inaccurate routing information. These funds were recouped by TCF Bank and the victim.

For these reasons, the United States requests this Court to affirm the magistrate courts order.

>Respectfully submitted,
>
>CHARLES T. MILLER
>United States Attorney

By:

>/s/SUSAN M. ROBINSON
>SUSAN M. ROBINSON
>Assistant U.S. Attorney
>WV Bar No. 5169
>Assistant U.S. Attorney
>P.O. Box 1713
>Charleston, WV 25326
>Telephone: (304) 345-2200
>Fax: (304) 347-5706
>E-mail: susan.robinson3@usdoj.gov

## CERTIFICATE OF SERVICE

It is hereby certified that service of the foregoing "RESPONSE OF THE UNITED STATES TO DEFENDANT ROBERT M. OTISO'S MOTION TO RECONSIDER PRETRIAL DETENTION" has been electronically filed and service has been made on opposing counsel by virtue of such electronic filing on this 7th of January 2010, to:

    John H. Tinney, Jr.
    222 Capitol Street
    P.O. Box 3752
    Charleston, WV  25337-3752

    /s/SUSAN M. ROBINSON
    SUSAN M.  ROBINSON
    Assistant U.S. Attorney
    WV Bar No.  5169
    Assistant U.S. Attorney
    P.O. Box 1713
    Charleston, WV  25326
    Telephone:  (304) 345-2200
    Fax:  (304) 347-5706
    E-mail:  susan.robinson3@usdoj.gov