IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA

v.                                   CRIMINAL NO. 2:09-00251

ROBERT M. OTISO

SENTENCING MEMORANDUM

Comes now the United States of America, by Susan M. Robinson, Assistant United States Attorney for the Southern District of West Virginia, and submits this memorandum in support of its position regarding sentencing in the instant case.

Introduction

On May 24, 2010, defendant pled guilty before this Court to conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 1349 as charged in Count One of the Eight Count indictment. Defendant pled guilty without benefit of a plea agreement with the United States.  The first draft of the presentence investigation report was prepared and provided to the parties on July 8, 2010. The final report, submitted on August 10, 2010, provided additional information for the Court's consideration.

The final report did not affect the defendant's advisory guideline range which utilizing the November 1, 2009 edition of the guidelines, was calculated as follows:  Guided by USSG § 2X1.1(a) (attempt, solicitation or conspiracy) defendant's base offense

level for the substantive offense was 7(USSG §2B1.1(a)(1)).  With
an intended loss resulting from the offense of $3,379,069.43, 18
levels were added (USSG §2B1.1(b)(1)(J)).  An enhancement of 2
levels was applied as a substantial part of the fraudulent scheme
was committed from outside the United States (USSG §2B1.1(b)(9)(B))
and finally an additional 2-level enhancement was added for
defendant's aggravating leadership role (USSG §3B1.2(c)) [sic]
(§3B1.1(c)).  The calculations resulted in an adjusted offense
level of 29. The Probation Department recommended a two-level
decrease for acceptance of responsibility pursuant to USSG
§3E1.1(a) for a total offense level of 27.  Based upon the total
offense level of 27 and a criminal history category of I,
defendant's advisory guideline imprisonment range is 70 to 87
months.

Defendant has filed the following three objections to the
presentence report which affect the guideline calculation[1]:

1.  Defendant objects to the attribution of $3.37 million
dollar loss calculation to him arguing that the actual loss in the
instant case was approximately $700,000;

_____

[1]Defendant also objects to several factual matters in the
report which do not affect the guideline calculation.  The burden
is upon the defendant to show the inaccuracy or unreliability of
the presentence report.  "Without an affirmative showing the
information is inaccurate, the court is 'free to adopt the findings
of the [presentence report] without more specific inquiry or
explanation.'"  United States v. Terry, 916 F.2d 157, 162 (4th
Cir.1990)(quoting United States v. Mueller, 902 F.2d 336, 346 (5th
Cir. 1990).

2.    Defendant objects to the application of a two-level enhancement for a substantial part of the fraudulent scheme having been committed in Kenya; and

3.  Defendant objects to the two-level enhancement for a role in the offense.

The presentence report sets out the offense conduct in detail. The United States will discuss the offense conduct with specificity where necessary in addressing each of defendant's arguments.

Discussion

A.    Loss

The United States has the burden of establishing the relevant loss by a preponderance of the evidence. United States v. Miller, 316 F.3d 495, 503 (4th Cir. 2003). However, the law does not require the United States to prove the amount of loss with precision, and reasonable estimates are not only expressly permitted, but are anticipated. Id. (The court need only make a reasonable estimate of the loss, given the available information.) When "intended loss" is greater than actual loss, the greater amount is used to determine the defendant's sentence. See, e.g., United States v. Hughes, 401 F.3d 540, 556-57 (4th Cir. 2005) (affirming enhancement for intended loss in bankruptcy fraud case even though all creditors were paid in full and therefore there was no actual loss); Miller, 316 F.3d at 498-503 (rejecting defendant's argument that intended loss should only be used when loss was

3

"likely or possible"; United States v. Williams, 81 F.3d 1321, 1327-28 (4th Cir. 1996) (intended loss measured by total amount of fraudulent amount of checks deposited, not lost to bank or lessor amount actually withdrawn); and United States v. Depew, 932 F.2d 324, 330 (4th Cir. 1991) (intended criminal conduct carries same weight as actual conduct); see also Elliott v. United States, 332 F.3d 754 (4th Cir. 2003) (affirming loss amount of $225,768 the total in forged check deposited in defendant's account, even though financial institution suffered no loss).

Moreover, in determining loss, a co-conspirator is liable for "all reasonably foreseeable acts and omissions of others in furtherance of [a] jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." United States v. Turnbull, No. 09-4320, 2010 WL 2725604, *2 (4th Cir. July 2, 2010)(unpublished)(quoting USSG §1B1.3(a)(1)(B)).   Application notes for the guideline explain:

> In determining the scope of the criminal activity that the particular defendant agreed to jointly undertake (i.e., the scope of a specific conduct and objectives embraced by the defendant's agreement), the court may consider any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others.

Id. citing USSG §1B1.3, comment (n.2).

Thus in <u>Turnbull</u>, it was not error for the court to hold the defendant responsible for moneys deposited into her accounts, even assuming she did not have actual knowledge of the amount, given the money she was spending and depositing and the length of time she was involved in the conspiracy.

First, it is clear in this case that the true measure of the crime is the intended loss. The intended loss is based on money actually sent from the victim states to the fraudulent accounts and, in all cases except for the $301,000.00 payment from the State of Ohio for Deloitte Consulting, actually deposited into the fraudulent accounts.[2] Secondly, the entire loss results from acts which defendant Otiso aided and abetted and acts reasonably foreseeable to him. In the instant case, defendant Otiso agreed to and did assist co-conspirators in opening fraudulent accounts for two dummy corporations, Unisyss [sic] Corporation and Deloite [sic] Consulting in the names of legitimate vendors of the State of West Virginia, Unisys Corporation and Deloitte Consulting Corporation. The accounts were opened on January 23, 2009. Otiso provided a mailing address for the accounts and retrieved the checks and check cards from this address. Otiso recruited co-defendant Ochenge to assist in transferring funds out of the Deloitte account to Kenya

---

[2]Notably, the United States is not calculating at least two significant payments, one from the State of Florida and one from the State of West Virginia, which were processed but halted because the fraud was discovered in sufficient time to prevent the electronic transfers.

and knew that the combined amount of the fraudulent funds that went into this account from the State of West Virginia and the Commonwealth of Massachusetts was in the millions. Between February 5, 2009 and April 22, 2009, he assisted in conducting transactions on the Unisys account to confirm that the account was active to receive fraudulent funds, including using a check card and making a deposit for which he was reimbursed with fraudulent funds. As late as April 22, 2009, Otiso sent a fraudulent contract between Massachusetts and Deloitte Consulting to TCF Bank for the purpose of convincing the bank to release the fraudulently diverted Massachusetts funds. Otiso was in contact with individuals in Kenya about the fraud and negotiated payment for himself and others for their participation in withdrawing funds from the Deloitte account and wiring them to Kenya. The total intended loss amount attributed to the Deloitte account alone is $2,509,523.63.

The fact that the fraud involved other accounts was also foreseeable to Otiso. Otiso also agreed to provide Chegge-Kraszeski with an authentically sized fraudulent social security card which he knew was intended to be provided to banks to open additional fraudulent bank accounts. Additionally, as shown in email communication the original plan was for Otiso to open a fraudulent account in the name of Accenture, LLP, a true vendor of the State of Kansas. The intended loss associated with the Accenture account at Wachovia Bank in North Carolina is

$869,545.80.  These activities among others clearly show that Otiso was responsible for the fraudulently diverted payments and the total intended loss of $3,379,069.43 was reasonable foreseeable to him.

B.    USSG §2B1.1(b)(9)(B) and (C) Enhancement

United States Sentencing Guideline §2B1.1(b)(9) provides in relevant part that if "(B) a substantial part of a fraudulent scheme was committed from outside the United States; or (C) the offense otherwise involved sophisticated means, increase by 2 levels."  While the Probation Office recommended this enhancement on subpart B of this section, the United States believes the enhancement is equally supportable under both subparts.

First, as fully set forth in the presentence report the fraud scheme originated through individuals in Kenya; co-conspirators in Kenya did the legwork to search web sites and acquire information through the internet from Kenya to perpetrate the fraud and highjack the vendor payments; documents were sent from the United States to Kenya and from Kenya to the United States; email communication flowed from Kenya to the United States and vice versa; both Otiso and Chegge-Kraszeski met with co-conspirators in Kenya and communicated with them by phone in Kenya from the United States; and, ultimately the vast majority of the proceeds of the fraud was wired from the United States to Kenya. Certainly these facts support the enhancement.

7

Moreover the crime involved sophisticated means. "Sophisticated means" refers to "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." USSG §2B1.1, comment. (n.8). As an example, such conduct may involve locating operations of the scheme in another jurisdiction, hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts. Id. In the instant case, dummy entities were created with fraudulent identification documentation (South African Passport), bank accounts were opened in the name of these dummy entities, again with the fraudulent passport and proceeds of the fraud were wired to multiple bank accounts at different banks in Kenya in the names of fictitious entities. Defendants and their co-conspirators skillfully completed the wire transfers by providing the financial institution with fraudulent invoices in the names of the fictitious entities to make the wires appear legitimate. Additionally, defendants engaged in numerous transactions in the United States to conceal the crime and the proceeds of the fraud which included the use of multiple bank accounts, one of which was also created with fraudulent identification. Moreover, defendants purchased multiple cashier's checks in the names of the false identities. These actions, including the sophistication of the scheme itself, provide an

additional basis for the two-level enhancement under USSG §2B1.1(B)(9).

C.   Role in the Offense

United States Sentencing Guideline §3B1.1(c) provides as follows: "If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b) [four and three level adjustments, respectively] increase [offense level] by 2 levels."   The guideline contemplates three distinct role in the offense enhancements and the determination of a defendant's "role in the offense" is based upon the defendant's role in the entirety of the relevant conduct, not just the offense of conviction.   United States v. Fells, 920 F. 2d 1179, 1184 (4th Cir. 1990).   In deciding whether a role in the offense enhancement should be applied, the court must consider seven factors:

> [1] the exercise of decision making authority, [2] the nature of the participation in the commission of the offense, [3] the recruitment of accomplices, [4] the claimed right to a larger share of the fruits of the crime, [5] the degree of participation in planning or organizing the offense, [6] the nature and scope of the illegal activity, and [7] the degree of control and authority exercised over others.

United States v. Cameron, 573 F.3d 179, 184( 4th Cir. 2009), citing USSG §3B1.1 and United States v. Sayles, 296 F.3d 219, 224 (4th Cir. 2002).

In the instant case, defendant Otiso was involved in the conspiracy with those in Kenya.  He recruited defendant Ochenge who in turn recruited defendant Shikanda to perform transactions at the

financial institution. Otiso introduced defendant Ochenge to
Chegge-Kraszeski for the purpose of having Ochenge transport
Chegge-Kraszeski in Minnesota and in assisting her with the bank
transactions. Otiso further negotiated defendant Ochenge's cut of
the fraud proceeds. Role enhancements have been applied in such
recruitment situations. See, e.g. United States v. Kincaid, 964
F.2d 325, 329 (4th Cir. 1992) (two level enhancement appropriate
where defendant exercised control over co-conspirators in the
distribution of drugs); United States v. Rashwan, 328 F.3d 160 (4th
Cir. 2003). Defendant Otiso's actions in recruiting Otiso support
a two level role enhancement.

D.   18 United States Code Section 3553(a) Factors

     The United States wishes to specifically address sentencing
factors set forth in 18 U.S.C. §3553(a). Notably, this offense as
detailed in the presentence investigation report is an extensive,
international fraud scheme that preyed upon public entities and
public funds. The scheme as designed within a matter of days could
cause astronomical losses to public funds, funds which are
unrecoverable because they are sent to untraceable accounts in a
foreign country in the names of fictitious entities. The
perpetrators of such a scheme are difficult to identify and
prosecute and but for the extreme diligence of a banking official
in the instant case, and the cooperation of a co-conspirator,
defendant Otiso and his Minnesota co-conspirators could have

remained unknown.  The financial loss sustained by the State of West Virginia for which the defendant is responsible is in the hundreds of thousands, and does not account for the loss of confidence in the public system, and the time and expense of public officials in addressing this fraud upon their system. Additionally, the impact of the scheme was far-reaching to include multiple states, multiple vendors and multiple financial institutions.

Defendant Otiso portrays his role and the role of his co-defendants here in the United States as merely "mules" or "couriers" in the scheme.  The United States strenuously disagrees. Defendant Otiso performed an integral role in the fraud by establishing the fraudulent bank accounts in the United States. These actions among others were essential in the success of the fraud and without his participation the losses would not have been sustained.  Even though he may not have been the architect of the scheme, his role was crucial.

<u>Conclusion</u>

Based upon the forgoing the United States requests the district court to adopt the findings and conclusions in the presentence report, including the calculation of the advisory sentencing guideline range.  Moreover, the United States advocates for a significant sentence that reflect the seriousness of the offense, promote respect for the law, to provide just punishment

and to provide a deterrence to others who might be inclined to engage in similar criminal conduct.

Respectfully submitted,

R. BOOTH GOODWIN II
United States Attorney

By:

/s/SUSAN M. ROBINSON
SUSAN M. ROBINSON
Assistant U.S. Attorney
WV Bar No.  5169
Assistant U.S. Attorney
P.O. Box 1713
Charleston, WV  25326
Telephone:  (304) 345-2200
Fax:  (304) 347-5706
E-mail:  susan.robinson3@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

It is hereby certified that the foregoing "Sentencing Memorandum" has been electronically filed and service has been made on opposing counsel by virtue of such electronic filing this the 17th day of August 2010, to:

      John H. Tinney, Jr.
      222 Capitol Street
      P.O. Box 3752
      Charleston, WV  25337-3752

                  /s/SUSAN M. ROBINSON
                  SUSAN M. ROBINSON
                  Assistant U.S. Attorney
                  WV Bar No.  5169
                  Assistant U.S. Attorney
                  P.O. Box 1713
                  Charleston, WV  25326
                  Telephone:  (304) 345-2200
                  Fax:  (304) 347-5706
                  E-mail:  susan.robinson3@usdoj.gov